*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0062**

In the Matter of the Welfare of the Child of: H. M. T., Parent

**Filed June 20, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-JV-15-3941

Mary F. Moriarty, Chief Hennepin County Public Defender, Mark D. Nyvold, Special Assistant Public Defender, Fridley, Minnesota (for appellant H.M.T.)

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Senior Assistant County Attorney, Minneapolis, Minnesota (for respondent county)

Shirley A. Reider, St. Paul, Minnesota (for guardian ad litem)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this appeal from an order terminating her parental rights, appellant argues that the district court clearly erred by finding that she failed to rebut the presumption of palpable unfitness to parent because she was not allowed sufficient time to complete her case plan and attain sobriety. We affirm.

**FACTS**

On April 2, 2014, appellant H.M.T.'s parental rights were involuntarily terminated with respect to two of her children. The district court found that H.M.T. "cannot parent the children due to chemical dependency issues." The district court concluded that H.M.T. neglected her parental duties, that she was palpably unfit to be a parent, that reasonable efforts to correct the conditions had failed, and that the children were neglected and in foster care. The district court further ruled that it was in the best interests of the children to terminate H.M.T.'s parental rights. Nothing in the record shows that H.M.T. ever appealed this termination of her parental rights.

H.M.T. subsequently became pregnant again and contacted her former child protection worker to inquire about how the previous termination of her parental rights would impact her pregnancy. H.M.T. was referred to Project Child, which helps expectant mothers maintain sobriety during pregnancy and ensures that they receive prenatal care. However, her involvement with Project Child was inconsistent. H.M.T. admitted to using drugs during the pregnancy, and drug tests showed that she had used methamphetamine and marijuana.

In July 2015, H.M.T. gave birth to C.A.T., who is the subject of this proceeding. C.A.T. tested positive for amphetamines and cannabinoids after his birth. Because H.M.T.'s parental rights to her other children were previously involuntarily terminated, the Hennepin County Human Services and Public Health Department (the county) was required to immediately file a petition to terminate her parental rights to C.A.T. *See* Minn. Stat. § 260C.503, subd. 2(a)(4) (2014). The county petitioned the district court to terminate

H.M.T.'s parental rights to C.A.T., alleging that H.M.T. was palpably unfit to parent. Because of the previous involuntary termination of H.M.T.'s parental rights, she was presumed palpably unfit to be a party to the parent-child relationship. *See* Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). Also because of the previous termination of H.M.T.'s parental rights, the district court relieved the county of its duty to make reasonable efforts to prevent the removal of C.A.T.

Despite the fact that the district court did not require the county to make reasonable efforts, the county offered H.M.T. a case plan. The focus of the plan was H.M.T.'s chemical dependency. She was supposed to enter treatment on July 17, but she did not. She ultimately entered treatment on July 28, but she left on July 30. She returned the following day, only to leave again on August 2. H.M.T. was supposed to submit to urinalysis for the county, but she never did. She did submit to urinalysis for Washington County probation on September 2 and 17, and the county learned that, despite H.M.T.'s denial that she was using drugs, she tested positive for THC, amphetamines, and methamphetamines. As part of her case plan, H.M.T. was offered in-home parenting education, supervised visits with C.A.T., and a mental health assessment, but she chose not to utilize these services. H.M.T.'s case plan also required her to maintain safe and suitable housing, but she remained homeless throughout the duration of her case plan.

On October 1, 2015, the district court held a termination of parental rights trial. H.M.T. did not appear but was represented by counsel at the trial. Due to H.M.T.'s failure to appear, the county requested to proceed by default. The district court granted the motion to proceed by default and heard the foregoing evidence. C.A.T.'s court-appointed guardian

3

ad litem also testified at the trial that terminating H.M.T.'s parental rights is in the best interest of C.A.T.

The district court terminated H.M.T.'s parental rights, concluding that she is palpably unfit to be a party to the parent-child relationship and that it is in C.A.T.'s best interests to terminate H.M.T.'s parental rights. H.M.T. moved for a new trial or to vacate the default findings, and the district court denied the motion. H.M.T. appeals.

## D E C I S I O N

H.M.T. argues that the district court clearly erred by finding that she did not rebut the presumption that she is palpably unfit because she was not given adequate time to complete her case plan and attain sobriety. "We review the termination of parental rights to determine whether the district court's findings address the statutory criteria and whether the district court's findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). "We give considerable deference to the district court's decision to terminate parental rights." *Id.* "[T]ermination of parental rights is always discretionary with the juvenile court." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136 (Minn. 2014).

A district court may terminate parental rights if "a parent is palpably unfit to be a party to the parent and child relationship." Minn. Stat. § 260C.301, subd. 1(b)(4). A parent is presumed to be palpably unfit "upon a showing that the parent's parental rights to one or more other children were involuntarily terminated." *Id.* "[T]he parent has the burden of rebutting the presumption of palpable unfitness." *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 543–44 (Minn. App. 2009) (quotation omitted). To rebut the presumption,

4

"the parent needs to produce only enough evidence to support a finding that the parent is suitable to be entrusted with the care of the children." *R.D.L.*, 853 N.W.2d at 137 (quotation omitted). A district court's determination of whether a parent has rebutted the presumption of palpable unfitness is a finding of fact, which is reviewed for whether it is supported by substantial evidence and is not clearly erroneous. *See D.L.D.*, 771 N.W.2d at 544 ("Yet the district court concluded [that the parents] failed to rebut the statutory presumption of palpable unfitness. Having reviewed the record evidence, we conclude that the district court's findings are supported by substantial evidence and are not clearly erroneous.").

Here, because H.M.T.'s parental rights to her other children were previously involuntarily terminated, she is presumed to be palpably unfit to parent, and she had the burden of rebutting that presumption. The district court determined that H.M.T. failed to meet that burden. H.M.T. defaulted in the proceedings, and the district court found that she therefore did not provide any evidence that she "addressed the issues necessary to properly parent her child." The district court also found that H.M.T. is palpably unfit "because of her inability to address her very serious chemical dependency." The district court found that during the pendency of this case, H.M.T. "ha[d] not successfully engaged in treatment[] and ha[d] demonstrated a consistent pattern of chemical dependency of a duration that renders her unable to care for the needs of her child." The district court further found that H.M.T. had "not established any period of sobriety[] or shown a desire to get sober."

H.M.T. argues that the district court clearly erred by finding that she failed to rebut the presumption that she is palpably unfit because, given her "severe meth addiction," it should have been foreseeable to the district court and the county that H.M.T. would initially refuse treatment and would need more time to complete her case plan. H.M.T.'s argument is unpersuasive, however, because her argument assumes that she desired to get treatment and become sober so that she could become fit to parent her child. Substantial evidence in the record supports the district court's finding that H.M.T. showed no desire to attain sobriety. The evidence established that she used drugs before, during, and after her pregnancy. She delayed going into treatment after the county filed the petition and offered her a case plan. When she finally did go into treatment, she failed to remain and did not return after leaving a second time. And, she failed to utilize any services offered to her as part of her case plan. The district court therefore had substantial evidence in support of its finding that H.M.T.'s "actions more strongly suggest that she is unable or unwilling to engage in treatment than that she has an actual interest in treatment." Critically, H.M.T. failed to appear at her trial to offer any evidence to the contrary. Because substantial evidence supports the district court's finding that H.M.T. failed to rebut the presumption that she is unfit to be a party to the parent-child relationship, the finding is not clearly erroneous.

**Affirmed.**